UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JIM C. CAMBRE | CIVIL ACTION |
| VERSUS | No. 18-6509 |
| RANDY SMITH, ET AL. | SECTION I |

### ORDER & REASONS

Before the Court is defendant Sheriff Randy Smith's ("Smith") second motion[1] to dismiss plaintiff Jim Cambre's ("Cambre") federal law claims against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted.

### I.

Cambre alleges that he is an Army veteran who suffers from depression and post-traumatic stress disorder.[2] He alleges that, in January 2018, he was unlawfully beaten and tased by several officers employed by the St. Tammany Parish Sheriff's Office ("STPSO").[3] Additionally, Cambre alleges that the STPSO officers conducted an unauthorized and unlawful search of his residence.[4] Accepting the facts in the amended complaint as true, they are as follows:

---

[1] R. Doc. No. 15. On September 24, 2018, Smith and the other defendants in this case filed a motion to dismiss in response to Cambre's original complaint. R. Doc. No. 8. On October 8, 2018, Cambre filed an amended complaint. R. Doc. No. 9. As a result, Smith filed the present motion, and the Court dismissed the first motion to dismiss. R. Doc. No. 17.
[2] R. Doc. No. 9, at 4, 6, 9.
[3] *Id.* at 2–3, 8.
[4] *Id.* at 8.

On January 21, 2018, Cambre created a Facebook post that caused his friends concern.[5] They attempted to contact Cambre, but he did not answer.[6] As a result, Pearl River police department patrol officer Jessica Picasso ("Picasso") was dispatched to Cambre's home for a "welfare" check.[7] A paramedic and assistant fire chief were called to the scene shortly thereafter.[8] According to Cambre, he was "despondent," but he "spoke calmly and softly" to Picasso and the paramedic, who encouraged him to seek help by going to the hospital.[9] In response, he expressed his concern that he would lose his job if he was hospitalized.[10]

At the request of the fire chief, five STPSO officers were dispatched to the scene.[11] The officers were carrying their rifles, although they secured the rifles in a patrol car after Cambre advised them that he did not have any weapons.[12] The STPSO officers did not request a debriefing on the situation from Picasso, nor did they ask if Cambre was being aggressive.[13] Instead, the STPSO officers approached Cambre and began yelling and cursing at him.[14] Then, without a warning or any verbal commands directed at Cambre, several of the officers approached him, and one yelled, "I'm tired of dealing with your f**king shit; get down on your knees!"[15] One

---

[5] *Id.* at 6.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 6–7.
[9] *Id.* at 7.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 8.
[15] *Id.*

2

officer tased Cambre for a cycle of more than five seconds and fired two probes at short range before all of the officers "jumped on top of [Cambre]," one officer continuously striking him with a baton.[16]

Cambre was unconscious for a period of time before he was handcuffed and loaded onto a stretcher.[17] In her incident report, Picasso wrote that she observed Cambre "spitting grass out of his mouth."[18] Picasso asked the STPSO officers for help escorting Cambre to the hospital, but they refused.[19] However, before they left Cambre's home, they conducted an unauthorized and unlawful search of his trailer.[20] Cambre was taken to Ochsner Medical Center in an ambulance and discharged the following morning.[21]

As a result of the foregoing incident, as it is described in the amended complaint, Cambre alleges that he sustained multiple injuries, including a laceration on his cheek, a knot above his ear, a swollen jaw, swollen ribs, and a badly bruised leg.[22] Cambre has also allegedly suffered from dizziness, headaches, and short-term memory loss.[23] He contends that he suffered a traumatic brain injury as the result of the beating—particularly the baton strikes to his head—and that the incident exacerbated his post-traumatic stress disorder.[24]

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at 8–9.
[22] *Id.* at 9.
[23] *Id.*
[24] *Id.*

In his amended complaint, Cambre identifies Smith as a policy-making official for STPSO and the individual in charge of rendering final decisions regarding STPSO's policies and practices.[25] Cambre alleges that, after the incident, Smith "purported to commence a use-of-force investigation through STPSO's internal affairs division."[26] Cambre claims that the investigation concluded that the STPSO deputies were acting in accordance with STPSO policy regarding the use of force; however, Cambre also alleges that the investigation was illegitimate—a "process that concealed the truth."[27] According to Cambre, STPSO has a *de facto* policy of using its internal affairs division to cover up bad policing practices in lieu of addressing deficiencies within the organization.[28]

In July 2018, Cambre filed this lawsuit.[29] On October 8, 2018, Cambre amended his complaint which names Smith, in his individual and official capacities, as well as the STPSO officers in their individual capacities, as defendants liable under 42 U.S.C. § 1983 and Louisiana law.[30] Smith now moves to dismiss Cambre's federal law claims against him.

## II.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth

---

[25] *Id.* at 1–2.
[26] *Id.* at 10.
[27] *Id.*
[28] *Id.*
[29] *See generally* R. Doc. No. 1.
[30] *See generally* R. Doc. No. 9.

4

well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547)).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

The Court will generally not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Hicks v. Lingle*, 370 F. App'x 497, 498 (5th Cir. 2010); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, however, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

# III.

In counts three and four of his amended complaint, Cambre asserts that Smith is liable pursuant to 42 U.S.C. § 1983 for civil rights violations committed by the STPSO officers, both in his individual and official capacities.[31] Smith argues that Cambre has not alleged facts sufficient to support his liability in either capacity.

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983). "Claims under § 1983 may be brought against persons in their individual or official capacity." *Id.* Cambre's claims against Smith are grounded in two theories of liability: failure to train and supervise and ratification. The Court will address these theories in turn.

## FAILURE TO TRAIN OR SUPERVISE

Cambre alleges civil rights violations under § 1983 against Smith, in both his individual and official capacities, based on a theory of his failure to train or supervise the STPSO officers.

### *Individual Capacity Liability*

"In order to succeed on a § 1983 claim against an official in his individual capacity, a plaintiff must 'establish that the defendant was either personally involved in the deprivation [of a constitutional right] or that his wrongful actions were causally

---

[31] *See* R. Doc. No. 9, at 14, 18.

connected to the deprivation.'" *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 374 (E.D. La. May 2, 2016) (Barbier, J.) (quoting *Jones v. Lowndes Cty.*, 678 F.3d 344, 349 (5th Cir. 2012)); *see also James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) ("A supervisor is not personally liable for his subordinate's actions in which he had no involvement."). Cambre does not contend that Smith was personally involved in the January 2018 incident.

Thus, to survive a 12(b)(6) challenge to his claim for failure to train or supervise against Smith in his individual capacity, Cambre must sufficiently plead the existence of supervisory liability. "A supervisor cannot be held liable under section 1983 on the basis of *respondeat superior*. . . . Rather, the misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). Cambre must allege facts sufficient to show that "(1) [Smith] either failed to supervise or train the subordinate official[s]; (2) a causal link exists between the failure to train or supervise and the violation of [Cambre's] rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Southard*, 114 F.3d at 551 (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). To establish "deliberate indifference, 'there must be 'actual or constructive notice' 'that a particular omission in their training program

causes . . . employees to violate citizens' constitutional rights' and the actor nevertheless 'choose[s] to retain that program.'" *Zadeh v. Robinson*, 902 F.3d 483, 497 (5th Cir. 2018) (quoting *Porter v. Ebbs*, 659 F.3d 440, 447 (5th Cir. 2011)). Specifically, "[f]or an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).

> Cambre's amended complaint alleges:
>
> Plaintiff is informed, believes, and alleges that Sheriff Smith was aware of facts from which the inference can be drawn that a substantial risk of harm existed, due to the lack of training and because of persistent, widespread practices known to Sheriff Smith as set forth hereinabove, and that Sheriff Smith in fact drew the inference. Plaintiff alleges that it should have been obvious to Sheriff Smith that the highly predictable consequences of not supervising the patrol officers involved in the suit herein was that they would apply force and conduct an unlawful search in such a way that Plaintiff's Fourth Amendment rights were at risk.[32]

However, these allegations are legal conclusions masked as facts.[33] Cambre argues that he has alleged detailed facts with respect to Smith's failure to supervise and train his officers on their use of batons and tasers.[34] He cites, for example, the amended complaint's allegations that STPSO officers use tasers and batons when their use is unwarranted and that STPSO officers fail to properly document their uses of force.[35]

---

[32] R. Doc. No. 9, at 17.
[33] *See also id.* at 14 ¶ 42 and 15–17 ¶ 44.
[34] R. Doc. No. 19, at 5.
[35] *Id.* (citing R. Doc. No. 9, at 14–15).

8

But even if Cambre has adequately alleged that Smith failed to train or supervise the STPSO officers, Cambre has not provided facts sufficient to plead that such failures amounted to deliberate indifference, which is fatal to his claim. "[M]ere proof that the injury could have been prevented if the officer[s] had received better or additional training cannot, without more, support liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

Furthermore, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001); *see also Rios v. City of Del Rio,* 444 F.3d 417, 427 (5th Cir. 2006). Cambre must, therefore, allege "at least a pattern of similar violations," which he has failed to do. *Id*. Cambre has not alleged facts even insinuating that STPSO officers have demonstrated a pattern of violations like those alleged in the amended complaint; merely stating that "persistent, widespread" practices exist is not enough under the law. Indeed, the amended complaint includes no allegation of *any* prior incident similar to the alleged January 2018 incident. The Court finds that Cambre has failed to state a claim for relief against Smith in his individual capacity for failure to train or supervise.[36]

---

[36] "Section 1983 claims against public officials in their individual capacities are subject to the defense of qualified immunity." *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 373 (5th Cir. 2014) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, "[q]ualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity." *Goodman*, 571 F.3d at 396. Because the Court has concluded that Cambre has failed to state a claim for relief against Smith in his individual capacity, an inquiry into

9

*Official Capacity Liability*

The Court turns now to Cambre's claim for failure to supervise or train against Smith in his official capacity. "[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'" *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n.2 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). As the Fifth Circuit has explained, under Louisiana law, "the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 469–70 (5th Cir. 1999); *see also Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 283 (5th Cir. 2002) (citing *Porche v. St. Tammany Parish Sheriff"s Office*, 67 F. Supp. 2d, 631, 635 (E.D. La. Oct. 5, 1999) (Lemmon, J.)); *Victoria W v. Larpenter*, 205 F. Supp. 2d 580, 586 n.16 (E.D. La. May 21, 2002) (Zainey, J.) (explaining that a lawsuit against a Louisiana sheriff in his official capacity "is the equivalent of a suit against the office he holds"). Thus, the Court considers Cambre's claims against Smith in his official capacity as claims against the St. Tammany Parish Sheriff as a legal entity.

Governmental entities "are not vicariously liable for the actions of their employees under § 1983." *Baker*, 75 F.3d at 200. The Fifth Circuit has explained that, "[t]o establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal

---

Smith's qualified immunity defense is unnecessary. *See id.* (declining to analyze the availability of the qualified immunity defense after concluding that the plaintiff had failed to establish the existence of deliberate indifference).

policy.'" *Valle v. City of Houston*, 613 F.3d 536, 521 (5th Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). "[The] plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'" *Id.* (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

As to the first element, an official policy or custom can be found in two forms:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)). Cambre has not alleged any policies or customs that fall within the ambit of the first category. At the motion to dismiss stage, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

Cambre alleges that the STPSO has several "persistent, widespread" customs, including customs whereby officers use tasers and batons in unwarranted situations; fail to properly document their uses of force; fail to use well established crisis

11

intervention tools; and engage in unlawful searches and seizures.[37] These allegations, standing alone, are too conclusory to pass muster under Rule 12(b)(6). The only facts included in Cambre's amended complaint that indicate the existence of these purported policies are those facts that form the basis of the alleged January 2018 incident. "But plausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' . . . a plaintiff must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622.

Moreover, "where the alleged policy is one of inadequate police training, the plaintiff can only satisfy the first element of municipal liability if the failure to train satisfies the 'deliberate indifference' standard that applies to supervisor liability." *Baker*, 75 F.3d at 200. In his opposition to the present motion, Cambre argues that he has properly pled deliberate indifference by alleging that Smith was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that he drew that inference."[38] However, as the Court has already explained, such allegations are purely conclusory and do not suffice.

The parties argue about the significance of a 2017 STPSO press release in connection with Cambre's failure to supervise or train theory. In his amended complaint, Cambre describes the press release as indicating that Smith assembled a crisis intervention team trained in de-escalation techniques for situations involving individuals in crisis.[39] Cambre alleges that the crisis intervention team was limited

---

[37] R. Doc. No. 9, at 14–15.
[38] R. Doc. No. 19, at 6.
[39] R. Doc. No. 9, at 17.

12

to four deputies and that STPSO's policies were defective because none of the four deputies were deployed to the scene of the alleged January 2018 incident involving Cambre.[40] Smith notes, in rebuttal, that the press release states that the crisis intervention team was tasked with, among other things, "training other departmental personnel in crisis intervention techniques."[41] According to Smith, the press release demonstrates that Smith acted proactively to provide his personnel with training on responding to individuals with behavioral health issues.[42]

Regardless of whether the four trained deputies were deployed to the scene, Cambre has not pled facts sufficient to allege that Smith acted with deliberate indifference. The Court agrees with Smith that the press release demonstrates, if anything, that Smith was aware of the problems posed by behavioral health-related dispatch calls and that he was actively working to address such problems, which simply cannot constitute deliberate indifference.[43]

---

[40] *Id.* at 16–17.
[41] R. Doc. No. 15-1, at 6; R. Doc. No. 15-2, at 1. When analyzing a motion to dismiss, a court is typically limited to reviewing the contents of the complaint, its attachments, and the motion. However, the court may also consider attachments to the motion to dismiss "that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Smith attached a copy of the press release to his motion to dismiss, but Cambre referenced the press release first—in his amended complaint to support his allegation that the STPSO has a defective training program with respect to crisis intervention techniques. R. Doc. No. 9, at 15, 16–17. Consequently, the press release constitutes an attachment that the Court is permitted to consider when ruling on the present motion.
[42] R. Doc. No. 15-1, at 6, 10.
[43] Smith is quoted in the press release as stating, "Generally people call the police when there is a behavioral health crisis. Past protocol oftentimes resulted in individuals being arrested or routed to local emergency rooms. We want to stop

**RATIFICATION**

Cambre also contends that Smith is liable for the STPSO officers' conduct in his official capacity under a theory of ratification. To support this theory, Cambre alleges that the STPSO posted a press release on Facebook related to the incident.[44] Cambre alleges that the Facebook post stated that a brief struggle occurred, acknowledged the use of a taser (but not a baton or any other use of force), and provided that investigators had determined that the officers' actions were in accordance with their training and agency policy.[45] Smith is also quoted as allegedly stating that Cambre was a "non-compliant individual."[46]

Cambre argues that the investigation was actually a "cover-up," in part because no "struggle" occurred as part of the alleged January 2018 incident, and that the press release is false.[47] According to Cambre, the foregoing facts and Smith's conclusion that the STPSO officers followed proper protocol all demonstrate that Smith ratified the subordinate officers' decisions and the bases for such decisions, which warrants imposing liability on Smith in his official capacity.

When an authorized policymaker approves a subordinate's decision and the basis for it, such ratification is chargeable to the government entity. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). However, the Fifth Circuit has limited

---

putting these individuals in jail and instead get them the appropriate help they need." R. Doc. No. 15-2, at 1.
[44] R. Doc. No. 9, at 18.
[45] *Id.*
[46] *Id.* at 18–19.
[47] *Id.* at 19–20.

14

the theory of ratification to "extreme factual situations." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 298 (5th Cir. 1998)). "Good faith statements made in defending complaints against municipal employees do not demonstrate ratification." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). Accordingly, "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848.

Even accepting the factual allegations in the amended complaint as true, the Court concludes that a theory of ratification cannot support Cambre's claim against Smith in his official capacity. Cambre's bald accusation that the investigation was a "cover-up" is not enough. The amended complaint includes no facts suggesting that Smith knew about the circumstances surrounding the January 2018 incident, as Cambre alleges them, let alone that he ratified the STPSO officers' conduct on that date and their grounds for engaging in such conduct. *See Peterson*, 588 F.3d at 848 (holding that a police chief was not liable for his subordinate officers' alleged use of excessive force under a theory of ratification despite the plaintiff's contention that the police chief investigated the officers' conduct and determined that it complied with departmental policies).

Furthermore, the Fifth Circuit has held that "[i]t is nearly impossible to impute lax disciplinary policy to [a governmental entity] without showing a pattern of abuses that transcends the error made in a single case." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir.

2001) and affirming the district court's dismissal of the plaintiff's excessive force claim against a police department). Cambre has "failed to allege 'a pattern of complaints by other citizens.'" *Id.* Thus, Cambre's theory of ratification cannot establish an official policy or custom, and his claim against Smith in his official capacity must be dismissed.

### IV.

Even if the STPSO officers violated Cambre's Fourth Amendment rights as he alleges in his amended complaint, the Court concludes that Cambre has failed to state a claim for relief based on such allegations against Sheriff Randy Smith.

Accordingly,

**IT IS ORDERED** that the motion to dismiss is **GRANTED** and that Jim Cambre's federal law claims against Sheriff Randy Smith, in both his individual and official capacities, are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, December 10, 2018.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**