# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JIM C. CAMBRE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-6509** |
| **ROGER GOTTARDI AND JASON WILSON** | **SECTION: "D"(3)** |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment (R. Doc. 71). For the reasons below, the motion is DENIED.

### I. Background

This is a 42 U.S.C. § 1983 case. Both parties recount and dispute in great detail the facts of the encounter from which this suit arises. The Court adopts the factual discussion from its previous Order (R. Doc. 26), which accepted the facts in Plaintiff's Amended Complaint (R. Doc. 9) as true, and therefore minimally describes the background herein, again accepting Plaintiff's claims as true.

Iraqi War Veteran Plaintiff Jim C. Cambre ("Cambre") was believed to be suicidal because of a post he made on Facebook on January 21, 2018.[1] Cambre's post prompted a welfare check conducted by Pearl River Police Department.[2] Then, a call for service went out to the St. Tammany Parish Sheriff's Office ("STPSO").[3] According to Cambre, the officers arrived carrying rifles, although they secured the rifles in a patrol car after Cambre advised them that he did not have any weapons.[4] The officers did not request a debriefing on the situation from the Pearl River police department patrol officer on the scene.[5] Cambre contends that without any warning or verbal commands, the STPSO officers approached and began yelling and cursing at him.[6] He alleges that one STPSO officer yelled, "I'm tired of dealing with your f**king shit; get down on your knees!"[7] Allegedly, one officer tased him for a cycle of more than five second and fired two probes at short range before all of the officer "jumped on top of [Cambre]" and one officer continuously struck him with a baton.[8] Cambre states that his constitutional rights were violated when officers "within a few minutes after arriving at Plaintiff's residence, resorted to the use of a taser (for a prolonged period of 15 seconds) and an ASP (delivering multiple blows to Plaintiff's body and at least once to his head)."[9]

---

[1] R. Doc. 1, pp.6-7; R. Doc. 79-1.
[2] R. Doc. 9, p. 6; R. Doc. 79, p. 1.
[3] R. Doc. 9, p. 7; R. Doc. 79, p. 1.
[4] R. Doc. 9, p. 7.
[5] R. Doc. 9, p. 7; R. Doc. 71-1, p. 2.
[6] R. Doc. 9, p. 8.
[7] *Id.*
[8] R. Doc. 9, p. 8; R. Doc. 71-1, p. 3.
[9] R. Doc. 79. *See* R. Doc. 86. Defendants argue that the excessive force claim relies on Cambre's contention that one of the officers stuck him on the head with an ASP baton. Defendants dispute whether this action occurred: "Plaintiff's contention that he was struck in the head by a baton is . . .

Cambre originally sued Defendants for violations under 42 U.S.C. § 1983 for excessive force,[10] unlawful search,[11] and *Monell*[12] liability. He also alleged a state law claim of battery and excessive force.[13] On October 22, 2018, St. Tammany Parish Sheriff Randy Smith moved to dismiss with prejudice all of Cambre's federal claims against him.[14] The Court granted that motion.[15] On July 11, 2019, Cambre moved to dismiss with prejudice Defendant Chris Harman and any claim for the alleged unlawful search of Cambre's home.[16] That motion was granted.[17] On August 19, 2019, Cambre moved to dismiss with prejudice Defendants Chad Melendez and Ryan Hopkins.[18] The Court also granted that motion.[19] Now remaining before the Court are Cambre's § 1983 claim for excessive force and state law claim against Defendants Roger Gottardi and Jason Wilson.[20]

## II. Legal Standard

Summary judgment is proper if Defendants show there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[21] If Defendants show the absence of a disputed material fact, Cambre "must go beyond

---

a highly improbable inference. . . . Plaintiff's allegation that one of the Deputies struck him on the head with an ASP baton is pure speculation." R. Doc. 86, pp. 3-4.
[10] R. Doc. 1, pp. 10-12.
[11] *Id.* at pp. 12-13.
[12] *Id.* at pp. 14-16.
[13] *Id.* at pp. 16-17.
[14] *See* R. Doc. 15.
[15] *See* R. Doc. 26.
[16] *See* R. Doc. 47.
[17] *See* R. Doc. 69.
[18] *See* R. Doc. 90.
[19] *See* R. Doc. 92.
[20] *See* R. Doc. 71-1, p. 3; R. Doc. 26; R. Doc. 92.
[21] FED. R. CIV. P. 56(a).

the pleadings and designate specific facts showing that there is a genuine issue for trial."²² The Court views facts and draws reasonable inferences in Cambre's favor.²³ The Court neither assesses credibility nor weighs evidence at the summary judgment stage.²⁴

III.     Discussion

Defendants argue that Cambre received several warnings from Deputy Gottardi to get on the ground or he would be tased, "yet [Cambre] refused to comply and began to back up towards to [*sic*] the wood line, while remaining in a fighting stance with balled fists."²⁵ Defendants argue that only after Cambre "failed to comply with several commands did Deputy Gottardi fire his taser."²⁶ Cambre alleges that Deputies Gottardi and Wilson immediately resorted to high degrees of force, without engaging in negotiation or de-escalation when Cambre posed no immediate threat and offered, at most, only passive resistance.²⁷

Defendants argue that Cambre's allegation that he was struck on the head with a baton is a "highly improbable inference" that he deduced from the nature of the injury to his head, specifically "[f]rom the evidence on my body . . . [t]he bruises on my leg, ribs, and head are pretty concurrent with – with the strikes of a – of a baton."²⁸ Cambre contends that he was struck with a baton on the head numerous

---

²² *McCarty v. Hillstone Restaurant Grp., Inc.*, 864 F. 3d 354, 357 (5th Cir. 2017).
²³ *Vann v. City of Southaven, Miss.*, 884 F. 3d 307, 309 (5th Cir. 2018).
²⁴ *Gray v. Powers*, 673 F. 3d 352, 354 (5th Cir. 2012) (internal citation omitted).
²⁵ R. Doc. 71-1, p. 25.
²⁶ *Id.*
²⁷ R. Doc. 79, p. 2.
²⁸ R. Doc. 86, p. 3 (quoting R. Doc. 50-6, p. 49).

times based on his alleged injuries of a concussion, dizziness, headaches, and some short-term memory loss.[29] The only use of a baton not in dispute is Corporal Wilson's use of a series of reverse strikes to Cambre's left thigh as a pain compliance measure to make him "give up his hand."[30]

Considering facts and drawing reasonable inferences in Cambre's favor[31] and without assessing credibility or weighing evidence, the Court finds there are genuine disputes as to material facts.[32] The Court does not address the various defenses offered by Defendants in its analysis herein, reserving those questions to the trier of fact. The Court examines whether Defendants are entitled to summary judgment, considering their defense of qualified immunity.

*Qualified Immunity*

The doctrine of qualified immunity protects government officials from civil damages liability when their actions could have been reasonably believed to be legal.[33] When qualified immunity defense is raised as part of a summary judgment motion, the plaintiff bears the burden of proof of showing that the defendants are not entitled to the defense.[34] To overcome qualified immunity, Cambre must show that (1) Defendants violated Cambre's constitutional right,[35] and (2) the right was clearly

---

[29] R. Doc. 9, p. 9.
[30] R. Doc. 71-1, p. 27.
[31] *See Vann v. City of Southaven, Miss.*, 884 F. 3d 307, 309 (5th Cir. 2018).
[32] *See Gray v. Powers*, 673 F. 3d 352, 354 (5th Cir. 2012) (internal citation omitted).
[33] *Whitley v. Hanna*, 726 F. 3d 631, 638 (5th Cir. 2013) (internal citation omitted).
[34] *Id.*
[35] The United States Supreme Court in *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014), states that the first prong asks whether the facts taken in the light most favorable to the party asserting injury show the officer's conduct violated a federal right.

established at the time of the challenged conduct.[36] The Court has discretion to decide which prong to consider first.[37]

At the first step, the Court concludes that Cambre has alleged facts that, when viewed in the manner most favorable to him, would establish a violation of Cambre's Fourth Amendment right to be free from excessive force.[38] Turning to the second step, the Court finds that the constitutional right at issue, the right to be free of excessive force under the Fourth Amendment, was clearly established at the time of the incident, and that, accepting Cambre's allegations as true, Defendants' conduct was objectively unreasonable in light of then-existing clearly established law. Therefore, Cambre has met his burden of rebutting Defendants' qualified immunity defense.

A. Constitutional Violation

Cambre alleges that Defendants violated his Fourth Amendment rights by using excessive force. To prevail on an excessive-force claim, Plaintiff must show (1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive; and (3) the excessiveness of which was clearly unreasonable.[39] The reasonableness of Defendants' conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," otherwise known as

---

[36] *Whitley*, 726 F. 3d at 638.
[37] *Id.*
[38] *See Hanks v. Rogers*, 853 F. 3d 738, 744 (5th Cir. 2017).
[39] *Cooper v. Brown*, 844 F. 3d 517, 522 (5th Cir. 2016).

the *Graham* factors.[40] Officers must assess the need for force and the relationship between the need and the amount of force used.[41] The speed with which an officer resorts to force is also relevant in determining whether that force was excessive to the need.[42] Each of these requires a factual analysis best addressed by the trier of fact.

Cambre has shown that he sustained a "more than *de minimus*" injury.[43] Resolving factual disputes in Cambre's favor, the Court accepts as true, at this stage, Cambre's allegation that he was struck in the head by a baton.[44] Defendants allege that they were dispatched to a situation where Cambre was reasonably believed to

---

[40] *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).
[41] *Deville v. Marcantel*, 567 F. 3d 156, 167 (5th Cir. 2009).
[42] *Trammell v. Fruge*, 868 F. 3d 332, 342 (5th Cir. 2017). In *Trammell*, the Fifth Circuit states that

> This Court has several times found that the speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need. *See Newman v. Guedry*, 703 F. 3d 757, 763 (5th Cir. 2012) (holding that disputes of fact were material because "a reasonable jury could find that the degree of force used was not justified where the officer 'engaged in very little, if any, negotiation' with the suspect and 'instead quickly resorted to' " force); *Deville*, 567 F. 3d at 168 (determining that "[a] reasonable jury could infer from [the plaintiff's] deposition testimony that [the defendant officer] engaged in very little, if any, negotiation with [the plaintiff]—and find that he instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle").

*Id.*
[43] *See Hanks v. Rogers*, 853 F. 3d 738, 744 (5th Cir. 2017) (stating that significant injuries are no longer required for excessive force claims and finding that the injury requirement is met because the plaintiff received medical treatment and a diagnosis noting contusions, acute strains, and bruised ribs); *See* R. Doc. 9, p. 9, ¶ 22; R. Doc. 79-1.
[44] R. Doc. 9, p. 9 ("Plaintiff remained at the Ochsner Medical Center until the following morning, at approximately 8:00 a.m., at which time Plaintiff was discharged. As a result of the beating, Plaintiff received a laceration on his left cheek, a knot above his left ear (believed to be the point of impact of the baton), Plaintiff's left jaw was swollen, his ribs on his left side were sore and swollen, and, from the bottom of Plaintiff's buttocks to slightly above his knee, his left leg was very badly bruised. With respect to injuries he received to his head, Plaintiff sought medical treatment (CT Scans) at Ochsner Medical Center and at the Veterans Administration. Since the incident, Plaintiff has experienced dizziness, headaches, and some short-term memory loss. Plaintiff believes, based on his concussion and symptoms, that he sustained a Traumatic Brain Injury as a result of his beating and, particularly, as a result of the baton strikes to the head."). *Id.*

be posing an immediate safety threat to himself and those around him.[45] Defendants contend that Cambre was highly intoxicated and considered to be a suicidal subject, specifically one who was considered to be suicide by cop.[46] Cambre contends that he did not threaten suicide that evening,[47] he complied with a command and showed he was unarmed,[48] and he was responsive. He avers that there was no crime at issue,[49] he posed no immediate threat to the safety of the officers or others,[50] and he did not actively resist the STPSO officers.[51]

It is worth noting that a jury may ultimately conclude that Defendants' version of the facts is more credible.[52] Under those facts, Defendants' actions may have been reasonable.[53] However, at this stage, the Court does not weigh evidence or assess credibility. Considering the facts in the light most favorable to Cambre, a jury could reasonably find that the degree of force the officers are alleged to have used in this

---

[45] R. Doc. 71-1, p. 21.
[46] *Id.*
[47] R. Doc. 79, p. 6.
[48] *Id.* at pp. 7-8, 20.
[49] *Id.* at p. 19 ("There were no criminal violations in the instant case. Significantly, there were no criminal charges ever brought against Cambre, such as resisting arrest, despite the deputies' claims that Cambre resisted. *See* Deposition of Picasso, p. 40 (Exhibit "G") Rather, this was a welfare check. The Call For Service (possible suicide) to the STPSO made it clear, from the very start, that the individual involved was suffering from a medical event (severe depression) as opposed to being engaged in criminal activity. As a result, the need for force was substantially lower than if Cambre had been suspected of a major crime. *See Deville v. Marcantel*, 567 F. 3d 156, 167 (5th Cir. 2009).").
[50] *Id.* at pp. 20-23.
[51] *Id.* at pp. 23. "Outside of the defendant[s'] self-serving testimony, no other witness observed Mr. Cambre act aggressively toward the Sheriff's deputies." *Id.*
[52] *See Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 731 (5th Cir. 2018) (pointing out that a jury could conclude that the force used was not excessive under a different set of facts). The Court notes that Defendants dispute whether Cambre was struck on the head with an ASP.
[53] *Darden*, 880 F.3d at 731, citing *Carroll v. Ellington*, 800 F.3d 154, 174–75 (5th Cir. 2015) (declining "to reach the close constitutional question" of whether "an officer's application of a Taser to an unarmed, seated suspect who fail[ed] to comply with an order to get on the ground" was excessive force).

case and the alleged immediate use of said force[54] were not justifiable under the circumstances.[55]

B. Clearly Established Law

Because the Court concludes that Cambre sufficiently alleged an excessive force claim, it considers whether Defendants' use of force, though a violation of the Fourth Amendment, was nevertheless objectively reasonable in light of clearly established law at the time the challenged conduct occurred.[56] A right may be clearly established without a case directly on point but "existing precedent must have placed the statutory or constitutional question beyond debate."[57]

In this case, the Court concludes that on the night Defendants encountered Cambre, clearly established law demonstrates that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than

---

[54] *Id.* at p. 23 ("Nevertheless, Deputies Gottardi and Wilson immediately used force tasing Mr. Cambre for 15 seconds, beat him with a baton in the head, and beat him in the ribs and elsewhere on the body. The officers made no attempt to negotiate with Mr. Cambre in an attempt to de-escalate the confrontation prior to using force on him.").
[55] *See e.g., Hanks v. Rogers*, 853 F. 3d 738, 747 (5th Cir. 2017) ("[C]learly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation."); *Darden v. City of Fort Worth, Tex.*, 880 F. 3d 722, 732 (5th Cir. 2018) (holding that the officer was not entitled to qualified immunity because there were genuine disputes of material facts as to whether the plaintiff was actively resisting arrest and whether the force used was clearly excessive and clearly unreasonable); *Brothers v. Zoss*, 837 F. 3d 513, 520 (5th Cir. 2016) (stating "In denying qualified immunity, we have placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force."); *Newman v. Guedry*, 703 F. 3d 757, 763 (5th Cir. 2012) ("If Newman's allegations are true, the officers immediately resorted to taser and nightstick without attempting to use physical skill, negotiation, or even commands. Viewing the summary-judgment facts in a light most favorable to Newman, we conclude that the use of force was objectively unreasonable.").
[56] *See Hanks v. Rogers*, 853 F. 3d 738, 746 (5th Cir. 2017).
[57] *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance.[58] Taking the facts as true as alleged by Plaintiff, Defendants are not entitled to qualified immunity on Cambre's § 1983 claim.

C. State Law Claim

Regarding Cambre's state law claim, Defendants argue that their actions did not violate any state law because their actions were "reasonable, done in good faith, not excessive, and within their discretion as law enforcement officers."[59] However, the Fifth Circuit states that the Louisiana's excessive force tort mirrors its federal constitutional counterpart:

> The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result. Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case, and factors to consider are: (1) the known character of the arrestee, (2) the risks and dangers faced by the officers, (3) the nature of the offense involved, (4) the chance of the

---

[58] *See Hanks*, 853 F. 3d at 747 (stating as support "*See Deville*, 567 F. 3d at 167–69 (finding qualified immunity inappropriate where, taking the facts in the light most favorable to the plaintiff, an officer making a minor traffic stop overpowered an individual who displayed, at most, passive resistance, and presented no safety threat or flight risk); *see also Doss v. Helpenstell*, 626 Fed.Appx. 453, 459–60 (5th Cir. 2015) (unpublished) (construing *Deville* as clearly establishing that an officer should receive no qualified immunity if he 'quickly escalate[s]' an encounter with a non-threatening, passively-resisting driver who posed little risk of escape by employing overwhelming force 'rather than continu[ing] to negotiate'); *Brothers v. Zoss*, 837 F. 3d 513, 520 (5th Cir. 2016) ('In denying qualified immunity, we have placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force.') (citing *Newman v. Guedry*, 703 F. 3d 757, 763 (5th Cir. 2012) and *Deville*, 567 F. 3d at 167–68)."). *See Pratt v. Harris Cnty., Tex.*, 822 F. 3d 174, 182 (5th Cir. 2016) (holding that the deputies' use of stun guns on the arrestee were not excessive or unreasonable and noting that although a taser was ultimately used, the record showed that both officers responded with measure and ascending actions that corresponded to the arrestee's escalating verbal and physical resistance) ("It is important that neither officer used their taser as the *first method* to gain [Plaintiff's] compliance.").

[59] R. Doc. 71-1, p. 29.

arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the arrestee, and (7) the exigencies of the moment.

*Deville v. Marcantel*, 567 F.3d 156, 172-73 (5th Cir. 2009). These considerations are sufficiently similar to the *Graham* factors discussed above. Therefore, the Court finds that Defendants are not entitled to qualified immunity, accepting Cambre's allegations as true and resolving doubts in his favor. These will be issues to be decided by the trier of fact.

## IV. Conclusion

Viewing facts and drawing reasonable inferences in Cambre's favor, the Court finds that Defendants are not entitled to judgment as a matter of law.

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (R. Doc. 71) is DENIED.

New Orleans, Louisiana, this the 28th day of August, 2019.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**